UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRYSTAL VASQUEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>              -against-<br><br>A+ STAFFING LLC, A+ STUDENT STAFFING LLC, MACK STAFFING SERVICES, ROBERT MACK,<br><br>                    Defendants. | Case No. 1:22-cv-2306<br><br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Krystal Vasquez, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges as follows:

## NATURE OF ACTION

1.    Plaintiff brings this action on behalf of herself and other similarly situated individuals employed as subway cleaners by Defendants in New York City.

2.    Plaintiff contends that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by knowingly requiring, suffering, or permitting her and other members of the putative FLSA Collective ("Collective Members") to work more than 40 hours per week without properly paying them overtime wages.

3.    Plaintiff also brings this action on behalf of herself and all similarly situated subway cleaners employed by Defendants in New York City as a class action under Federal Rule of Civil Procedure 23 to remedy the following violations of the New York Labor Law ("NYLL"):

    a.   Failure to pay overtime as required by the New York Minimum Wage Act, New York Labor Law §§ 650–655, and supporting regulations

    b.   Failure to provide wage notices and wage statements as required by the New York Wage Theft Prevention Act, NYLL § 195, and supporting regulations

c.  Failure to provide Plaintiff with paid sick leave as required by the New York State Paid Sick Leave Law, NYLL § 196-b, and supporting regulations.

4.    Plaintiff also brings this action on behalf of herself and all similarly situated subway cleaners employed by Defendants in New York City as a class action under Federal Rule of Civil Procedure 23 to recover unpaid prevailing wages, daily overtime, and supplemental benefits that she and the members of the putative class were entitled to receive for work that they performed under contracts entered into between Defendants and the Metropolitan Transit Authority and/or New York City Transit Authority (collectively "MTA").

## PARTIES

### I.    Plaintiff

**Krystal Vasquez**

5.    Individual and Representative Plaintiff Krystal Vasquez is an adult individual residing in Brooklyn and is a citizen of the state of New York. She was employed by Defendants as a subway cleaner from on or about July 29, 2020, to on or about May 1, 2021.

### II.    Defendants

**A+ Staffing LLC, A-Plus Student Staffing LLC**

6.    At all relevant times, Defendants A+ Staffing LLC and A-Plus Student Staffing LLC (the "A+ Defendants") have been and continue to be employers engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

7.    Upon information and belief, the A+ Defendants are Texas corporations with their headquarters and principal places of business in Dallas, TX.

8.    At all relevant times, the A+ Defendants have been and continue to be employers under NYLL § 190.

9.    Upon information and belief, the A+ Defendants are, and at all relevant times were, staffing/placement agencies that provide staffing services, including contracting with the MTA to provide subway cleaning services.

10.    Upon information and belief, at all relevant times, the A+ Defendants had gross revenues in excess of $500,000.00.

11.    At all relevant times, the A+ Defendants employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

12.    All actions and omissions described in this complaint were made by the A+ Defendants directly or through their supervisory employees and agents.

**Mack Staffing Services, Robert Mack**

13.    Upon information and belief, Defendant Mack Staffing Services ("Mack Staffing") is an active New Jersey corporation with headquarters and its principal place of business in Saddle Brook, NJ.

14.    At all relevant times, Defendant Mack Staffing has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

15.    At all relevant times, Defendant Mack Staffing has been and continues to be an employer under NYLL § 190.

16.    Upon information and belief, at all relevant times Defendant Mack Staffing had gross revenues in excess of $500,000.00.

17.    Upon information and belief, Defendant Mack Staffing is and at all relevant times was, a staffing/placement agency that provides staffing services, including contracting with the MTA to provide subway cleaning services.

18.    Upon information and belief, and according to corporate filings, Defendant Robert Mack is the Chief Executive Officer and Registered Agent of Mack Staffing.

19.    Upon information and belief, Defendant Robert Mack resides in and is a citizen of New Jersey.

20.    Upon information and belief, Defendant Robert Mack is the founder and the owner and operator of Mack Staffing.

21.    Upon information and belief, Defendant Robert Mack is, and was at all relevant times, responsible for controlling the operations of Mack Staffing, including setting Mack Staffing's payroll policies (including the unlawful practices complained of here), determining the companies' policies with respect to payroll and scheduling, and is otherwise in charge of running the day-to-day operations of the business of Mack Staffing.

22.    According to Robert Mack's LinkedIn profile, he is "[d]irectly responsible for the overall operations and sales management for a multi million dollar regional staffing agency that employs a workface of over 1500 full and part time employees on an annual basis through-out three states." His "responsibilities also include but are not limited to the overall management of all accounting and financial functions as well as all marketing, business development, advertising and social media campaigns for 4 independent staffing divisions."

23.    Defendant Robert Mack participated in the day-to-day operations of Mack Staffing and acted intentionally and maliciously in his direction and control of Plaintiff and Mack Staffing's other similarly situated employees and is an "employer" under NYLL and relevant regulations and is jointly and severally liable with Defendant Mack Staffing.

24.    At all relevant times, Defendants Mack Staffing and Robert Mack (the "Mack Defendants") employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d).

25.    The A+ Defendants and the Mack Defendants (collectively "Defendants") were responsible for hiring and firing Plaintiff and other employees, setting rates and methods of pay, setting schedules, and maintaining employment records.

26.    All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## JURISDICTION AND VENUE

27.    This court has subject matter jurisdiction over this matter under 29 U.S.C. § 216(b) (FLSA actions "may be maintained against any employer … in any Federal or State court of competent jurisdiction"), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…"). The court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are residents of different states. The court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

28.    The claims under New York law are so closely related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

29.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

30.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## COLLECTIVE ACTION ALLEGATIONS

31.    Plaintiff brings her first cause of action as a collective action for herself and all others similarly situated to recover unpaid overtime wages, liquidated damages, and other damages related to Defendants' violation of the FLSA.

32.    Plaintiff pursues the requested relief on behalf of the following collective:

All persons employed by Defendants at any time three years before the filing of this Complaint and through the entry of judgment in this case (the "Collective Action Period") who worked in New York City as subway cleaners (the "Collective Members").

33.    A collective action is appropriate because Plaintiff and the Collective Members are similarly situated, in that they were all subjected to Defendants' illegal policies, including its policy of failing to pay overtime premiums at the proper rate for work performed in excess of 40 hours each week. As a result of this policy, Plaintiff and the Collective Members did not receive the legally required overtime premium payments for all hours worked in excess of 40 hours per week.

34.    Plaintiff and the Collective Members have substantially similar, if not identical, job duties and are or were paid based on a similar, if not identical, payment structure.

35.    Specifically, even though Plaintiff did not satisfy any test for exemption, Defendants engaged in a common scheme requiring, suffering, or permitting Plaintiff and the Collective Members to work overtime and failed to pay Plaintiff and Collective Members appropriate overtime premiums.

36.  Plaintiff and the Collective Members were hired by Defendants and assigned to work as subway cleaners for the MTA.

37.    Plaintiff and the Collective Members were all misclassified as independent contractors when they should have been classified as employees.

38.    Defendants required Plaintiff and the Collective Members to follow Defendants' policies, practices, and directives for cleaning. Defendants retained the right to terminate subway cleaners' employment at any time. Defendants could terminate a subway cleaner if the cleaner behaved in a way that Defendants believed was inappropriate or had violated one of Defendants' rules or standards.

39.    Defendants controlled the work schedules that Plaintiff and the Collective Members worked.

40.    Plaintiff and the Collective Members were all hourly paid employees.

41.    Defendants set the rates and method of pay applicable to Plaintiff and the Collective Members.

42.    Defendants required, suffered, or permitted Plaintiff and the Collective Members to work over forty hours per week without proper overtime pay.

43.    Defendants did not pay Plaintiff and the Collective Members an overtime premium of 1½ times their legally required hourly rate for all time worked in excess of 40 hours per week.

44.    Defendants maintained common timekeeping systems and policies with respect to Plaintiff and the Collective Members.

45.    Defendants failed to record all the time actually worked by Plaintiff and the Collective Members.

46.    Plaintiff estimates that the Collective will include at least 40 members. The precise number of Collective Members should be readily available from Defendants' records, including personnel, scheduling, and time records, and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Collective, its members may be informed of the pendency of this action directly by U.S. mail and electronic mail.

47.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

48.    Under the NYLL and the New York common law, Plaintiff brings her Second through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All persons employed by Defendants at any time six years before the filing of this Complaint through the entry of judgment in this case (the Class Period") who worked for Defendants in New York City as subway cleaners (the "Class Members").

49.    The number and identity of the Class Members can be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

50.    The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, there are at least 40 Class Members.

51.    Common questions of law and fact exist as to all Class Members, and such questions predominate over any questions solely affecting individual Class Members.

52.    Common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL

b.    whether Defendants failed to keep accurate time records for all hours worked by Plaintiff and the Class Members

c.    whether Defendants failed to pay proper overtime wages to Plaintiff and the Class Members for all hours worked over 40 in a given week

d.    whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates

e.    whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of 40 hours per workweek or eight hours per day

f.    whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members supplemental benefits on

prevailing wage jobs as required by the New York City and New York State prevailing wage schedules

g.  whether Defendants were unjustly enriched by failing to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs

h.  whether Defendants failed to provide Plaintiff and Class Members with proper wage notices and wage statements

i.  whether Defendants failed to provide Plaintiff and the Class Members with paid sick leave

j.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

k.  the nature and extent of classwide injury and the measure of damages for those injuries.

53.  Plaintiff's claims are typical of the Class Members' claims.

54.  Plaintiff, like all Class Members, worked for Defendants in New York City as a subway cleaner and her work was in accordance with Defendants' corporate policies. Plaintiff, like all Class Members, was, among other things, not paid overtime wages for all hours worked over 40 in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed under contracts with the MTA; was not provided with proper wage notice and wage statements; and was not provided with paid sick leave. If Defendants are liable to Plaintiff for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

55.  Plaintiff and her counsel will fairly and adequately represent the class.

56.  There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover her own damages.

57.  Plaintiff's counsel are experienced class action litigators who are well prepared to represent the interests of the Class Members.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

59.     Defendants are sophisticated parties with substantial resources. The Individual Plaintiff and Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the Defendants. The individual members of the Class have no capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTUAL ALLEGATIONS

60.     Defendants hired Plaintiff and the Collective Action Members and Class Members to work as subway cleaners at various MTA work sites in New York City.

61.     At all relevant times, Plaintiff performed subway cleaning work for Defendants at various MTA work sites in New York City.

## I.     The Transit Authority Contracts

62.     At all relevant times, Defendants have been in the staffing business.

63.     Upon information and belief, beginning in or about March 2020, as part of its response to the coronavirus pandemic, the MTA implemented "aggressive cleaning and disinfection programs for the safety of [its] riders and employees." In some of its programs, "including cleaning and disinfecting subway cars and high touch points in stations," it "partnered

with third-party contractors." See Contractors for cleaning and disinfecting during the coronavirus pandemic, https://new.mta.info/coronavirus/cleaning/contractors.

64.    Defendants were among the entities that entered into contracts (the "Transit Authority Contracts") with the MTA, as either prime contractors or subcontractors, to furnish labor, material, and equipment to clean and disinfect subway cars and high touch points in stations ("subway cleaning work").

65.    Under Article 9 of the New York Labor Law, as a matter of fact or by operation of law, the Transit Authority Contracts obligated Defendants to pay Plaintiff and all other similarly situated employees at or above the applicable local prevailing wage rates, including any required supplemental benefits and overtime premiums.

66.    New York Labor Law § 231 provides that the wages to be paid to building service workers shall be not less that "the prevailing wage in the locality for the craft, trade or occupation of the service employee."

67.    As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiff and all other similarly situated employees should have been annexed to and formed a part of the Transit Authority Contracts. If not annexed to the Transit Authority Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and public policy.

68.    The Transit Authority Contracts also provided, as a matter of fact or by operation of law, that any subcontracts that any contractor entered into contain language requiring the payment of prevailing wages and supplements to all workers furnishing labor at the MTA sites.

69.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Transit Authority Contracts was made for the benefit of all workers furnishing labor for one or more public agencies, and those workers are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

70.    As an employee of Defendants who was assigned to work on Defendants' publicly financed projects, Plaintiff was an intended third-party beneficiary of the Transit Authority Contracts.

71.    In accordance with the Transit Authority Contracts, Plaintiff performed subway cleaning work at MTA sites.

72.    Upon information and belief, Defendants willfully failed to pay Plaintiff the prevailing rates and supplements to which she was entitled.

73.    Upon information and belief, Defendants willfully failed to pay Plaintiff overtime pay at 1 ½ times the lawful prevailing wage rate to which they were entitled, in violation of the FLSA.

74.    Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits, and overtime premiums calculated based on prevailing wage rates were corporate policies that also applied to all of Defendants' other similarly situated employees.

75.    On May 18, 2020, New York City Comptroller Scott Stringer issued a letter to Patrick Foye, Chairman and CEO of the MTA, stating that the New York City Transit Authority had contracted with private companies to perform subway cleaning work, but that these private companies were not paying their employees prevailing wages and benefits, as required by the New York Labor Law. The Comptroller determined that building service prevailing wages under NYLL Article 9 apply to these workers, and that the applicable prevailing wage classification is Building Cleaner and Maintainer (Office) Cleaner/Porter.

## II.    Plaintiff Krystal Vasquez's work for Defendants

76.    Plaintiff Krystal Vasquez began working for Defendants in or around July 29, 2020, as a subway cleaner. She continued to work for Defendants until on or about May 1, 2021, when she and other employees were instructed to complete new hire paperwork for a different entity.

77.     Plaintiff Vasquez learned about the job from workers at the Brighton Beach station, which is the subway station closest to her home. She filled out application papers that she received electronically.

78.     Plaintiff Vasquez then received paperwork from Defendant A+ Staffing stating that she was an "independent contractor." Among other things, the paperwork stated that Vasquez would provide "Commercial Cleaning and Support." The paperwork stated that A+ Staffing would not withhold any employment or other taxes from Vasquez's pay, and that Vasquez would be responsible for all tax payments.

79.     The paperwork from A+ Staffing also stated that Plaintiff Vasquez would be paid at a rate of $15–$16 per hour, and that she would receive no benefits.

80.     The paperwork that Plaintiff Vasquez received from A+ Staffing included a "Carbon Copy Event" for Defendant Robert Mack at Defendant Mack Staffing.

81.     The paperwork from A+ Staffing did not include the wage notice that is required under NYLL, Article 6, § 195(1).

82.     Plaintiff Vasquez began her work as a subway cleaner for Defendants on or about July 29, 2020.

83.     Defendants were responsible for setting Plaintiff's schedule, directing and supervising the manner of her work, including the supplies and equipment she was required to use, and determining how she would be paid.

84.     During her employment with Defendants, from on or about July 29, 2020, to on or about May 1, 2021, Plaintiff Vasquez did not receive any wage statements in the form required by NYLL, Article 6, § 195(3), nor did she receive paystubs or any other record of the hours she had worked.

85.     In January 2021, Plaintiff Vasquez received a 1099 from Defendant A-Plus Student Staffing Inc.

86.     Although it was clear that Plaintiff Vasquez would be providing work for a contractor that was contracted to provide work for the MTA, she received no notice that she was entitled to prevailing wages or supplemental benefits.

87.     Plaintiff Vasquez normally worked at the Brighton Beach subway station. She sometimes worked at the Coney Island/Stillwell Avenue station.

88.     Although Defendants did not have a time clock, when Plaintiff Vasquez reported for work, she put her name on a piece of paper to record her arrival at the worksite. In addition, a supervisor was always present to record who was working and when they were working.

89.     Plaintiff Vasquez's duties included cleaning and sanitizing Transit Authority subway cars and stations. Specifically, Vasquez cleaned the B train when it arrived at the subway station by wiping the surfaces of the train's interior, mopping, and sweeping.

90.     From on or about July 29, 2020, until on or about May 1, 2021, Plaintiff Vasquez normally worked five days per week, Monday through Friday, from 6:00 a.m. until 2:00 p.m. During that time, she also sometimes worked longer hours, including double-shifts, such as during the week of August 3, 2020, and the week of November 16, 2020, which resulted in her working over 40 hours during those weeks.

91.     During the time that she was employed by Defendants, from on or about July 29, 2020, to on or about May 1, 2021, Plaintiff Vasquez was paid $15 per hour, regardless of whether she worked over 40 hours per week or over eight hours per day.

92.     Throughout Plaintiff Vasquez's employment with Defendants, she was paid $15.00 per hour for her work performed for Defendants at Transit Authority work sites.

93.     Throughout Plaintiff Vasquez's employment with Defendants, during which performing work under Transit Authority contracts at MTA worksites, she did not receive any supplemental benefits nor was she paid the required prevailing wage rates in effect at the time.

94.     Although the New York Paid Sick Leave Law went into effect in September 2020, and required employers as of January 1, 2021, to provide employees with paid sick leave,

14

Defendants never provided Plaintiff Vasquez with paid sick leave. Instead, she was informed that she had "no benefits."

95.    When Plaintiff Vasquez was unable to work due to illness or other reasons that would have entitled her to paid sick leave, she was not paid.

## FIRST CAUSE OF ACTION:
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

96.    Plaintiff, on behalf of herself and the FLSA Collective Members, incorporates the allegations above.

97.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et. seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

98.    Defendants have failed to pay Plaintiff and the FLSA Collective time and one-half their regular rate of pay for all hours they worked in excess of 40 hours in a work week.

99.    As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

100.    Defendants' unlawful conduct, as described in this complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this complaint were unlawful. Defendants have not made any good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

101.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION:
### New York Labor Law – Unpaid Overtime

102.    Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

103.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff and the Class Members.

104.    Defendants have failed to pay Plaintiff and the Class Members the overtime wages to which they are entitled under the NYLL.

105.    Defendants have failed to pay Plaintiff and the Class Members 1 ½ times the hourly rate they should have been paid for all hours worked in excess of forty per work week.

106.    Defendants knew or should have known that they failed to pay Plaintiff and the Class Members overtime wages for hours worked in excess of forty per week and thus willfully violated the NYLL, Article 19, §§ 650 *et seq*.

107.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and prejudgment and postjudgment interest.

## THIRD CAUSE OF ACTION:
### Breach of Contract

108.    Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

109.    Upon information and belief, the Transit Authority Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work pursuant to such contracts.

110.    The prevailing rate schedules require that employees working over eight hours in one day be paid overtime.

111.    Those prevailing rates of wages and supplemental benefits were made part of the Transit Authority Contracts for the benefit of Plaintiff and the other employees performing work under such contracts.

112.    If the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were implied as a matter of law, requiring Defendants to pay Plaintiff and the Class Members prevailing wages, daily/weekly overtime, and supplemental benefits for all work performed.

113.    Defendants' failure to pay Plaintiff and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed under the Transit Authority Contracts constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

114.    As a result of Defendants' failure to pay Plaintiff and the Class Members at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

### FOURTH CAUSE OF ACTION:
### Unjust Enrichment & Quantum Meruit
### (Pleaded in the Alternative)

115.    Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

116.    Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff and the Class Members.

117.    Equity and good conscience require that Defendants pay restitution to Plaintiff and the Class Members.

118.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums,

and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the Transit Authority Contracts.

119.   Plaintiff and the Class Members provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff expected compensation.

120.   Defendants knowingly accepted such services yet failed to pay Plaintiff and the Class Members the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

121.   As a result of Defendants' failure to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff and the Class Members are entitled to relief from Defendants under New York's common law of unjust enrichment.

122.   As a result of Defendants' failure to pay Plaintiff and the Class Members the reasonable value of the valuable services they rendered, Plaintiff and the Class Members are entitled to relief from Defendant under New York's common law of quantum meruit.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Wage Notice Violations

123.   Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

124.   At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Class Member within the meaning of the New York Labor Law, §§ 2 and 651.

125.   Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by NYLL Article 6, §195, on the date of hire and on the date of any wage increases, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the

employer in accordance with NYLL, Article 6, §191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

126.   Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants $50.00 per employee for each work day that the violations occurred or continue to occur, up to a total of $5,000 per employee, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

## SIXTH CAUSE OF ACTION
### New York Labor Law – Wage Statement Violations

127.   Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

128.   Defendants have willfully failed to supply Plaintiff and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing, among other things, Plaintiff's straight time rate of pay, overtime rate or rates of pay if applicable, deductions from pay, and an accurate count of the number of hours worked, including overtime hours worked if applicable.

129.   Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant $250.00 per employee for each work day that the violations occurred or continue to occur, or a total of $5,000 per employee, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, § 198(1-d).

## SEVENTH CAUSE OF ACTION
### NEW YORK LABOR LAW – PAID SICK LEAVE VIOLATIONS

130.   Plaintiff, on behalf of herself and the Class Members, incorporates the allegations above.

131.    Under NYLL § 196-b, beginning on September 30, 2020, Plaintiff and the Class Members were entitled to accumulate paid sick leave at a rate of one hour for every 30 hours worked.

132.    Beginning on January 1, 2021, Plaintiff and the Class Members were entitled to take paid sick leave.

133.    Defendants never provided Plaintiff or the Class Members with any paid sick leave. Instead, Defendants informed Plaintiff and the Class Members that they were entitled to "no benefits."

134.    When Plaintiff and the Class Members were unable to work due to illness or other reasons that would have qualified them for paid sick leave, they were not paid.

135.    Defendants' failure to provide Plaintiff with paid sick leave violated the New York Paid Sick Leave Law, NYLL § 196-b.

136.    Due to Defendants' NYLL violations, Plaintiff and the Class Members are entitled to recover from Defendants all unlawfully withheld benefits, together with liquidated damages, as well as attorneys' fees and costs, and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Collective Members and Class Members, respectfully request that this Court grant the following relief:

    a.   Designation of this action as a collective action on behalf of the Collective Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Members

    b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and her counsel to represent

the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law

a. An order tolling the statute of limitations

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and New York Common Law

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein

d. An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL, and supporting regulations

e. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL and supporting regulations

f. $50.00 per Plaintiff and each Class Member for each work day that the violations of the wage notice provision of the NYLL, Article 6 § 195, occurred or continue to occur, up to a total of $5,000 per Plaintiff and each of the NYLL Class Members, as provided for by NYLL, Article 6 § 198(1-b)

g. $250.00 per Plaintiff and each Class Member for each work day that the violations of the wage statement provision of the NYLL, Article 6 § 195, occurred or continue to occur, up to a total of $5,000.00 per Plaintiff and each Class Member, as provided for by NYLL, Article 6 § 198(1-d)

h. An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class

i. An award of prejudgment and postjudgment interest

j. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

k. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial

by jury on all questions of fact raised by the Complaint.

Dated:    April 22, 2022
          New York, New York

_____
Margaret A. Malloy
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
518-692-3748
mmalloy@workingsolutionsnyc.com

Brendan Sweeney
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930
bsweeney@workingsolutionsnyc.com
*Attorneys for Plaintiff Krystal Vasquez*