# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRYSTAL VASQUEZ, MARIA de PILAR ESPINOZA VERA, MILENA ELIZABETH AGUILAR SANTANA, JOSE ALEXEI MORALES GARAVIT, KRAIG BROWN, DIORISSA CARELA MEDINA, ARACELIS PERALTA, ADONIS PEREZ, EDGAR O. SANCHEZ GATICA, JOSE GUILLERMO MEDRANO AGUILAR, RONAL MIGUEL ARGUETA MEDRANO, MARIO RENE CHAFOYA, and EUGENIO SERRANO, individually and on behalf of all others similarly situated,<br>                            Plaintiffs,<br>– against –<br><br>STAFF SUPPORT TEAM, MACK MANAGEMENT GROUP LLC, MACK CAT LABOR, ROBERT MACK, SUPREME RESTORATION, LLC, DBA SERVPRO OF WASHINGTON COUNTY, and JDL INC., DBA SERVPRO OF NEWPORT & BRISTOL COUNTIES,<br><br>                            Defendants. | **Case No.: 1:22-cv-3468-LDH-CLP** |
| KRYSTAL VASQUEZ, MILENA ELIZABETH AGUILAR SANTANA, KRAIG BROWN, JOSE GUILLERMO, MEDRANO AGUILAR, and MARIO CHAFOYA, individually and on behalf of all others similarly situated,<br>                            Plaintiffs,<br>– against –<br><br>A+ STAFFING LLC; A+ STUDENT STAFFING LLC, MACK STAFFING SERVICES; ROBERT MACK, SUPREME RESTORATION, LLC, DBA SERVPRO OF WASHINGTON COUNTY, and JDL INC., DBA SERVPRO OF NEWPORT & BRISTOL COUNTIES,<br><br>                            Defendants. | **Case No.: 1:22-cv-02306-LDH-CLP** |

**DECLARATION OF BRENDAN SWEENEY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS AND COLLECTIVE, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, APPOINTMENT OF A SETTLEMENT CLAIMS ADMINISTRATOR, AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT**

I, Brendan Sweeney, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am an attorney admitted to practice in the State of New York and in this court. I am a Partner at The Law Office of Christopher Q. Davis PLLC (the "Working Solutions Law Firm"), counsel for the Named Plaintiffs and Opt-in Plaintiffs (collectively, "Plaintiffs") and the putative Class and Collective in the above-captioned matter. As such, I am fully familiar with the facts and circumstances stated herein.

2. The Working Solutions Law Firm is based in New York City and focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, wage and hour and discrimination claims, as well as contract and severance negotiations.

3. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

4. I make these statements based on personal knowledge and would so testify if called as a witness.

5. I submit this Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class and Collective, Appointment as Class Counsel, Appointment of a Settlement Claims Administrator, and Approval of Proposed Notice of Settlement ("Motion for Preliminary Approval"). All defined terms contained herein shall have the same meanings as set forth in the Settlement

Agreement, executed on or about February 13, 2024, and attached hereto as **Attachment 1**.

**Procedural History**

6. On April 22, 2022, Krystal Vasquez filed a Class and Collective Action Complaint against A+ Staffing LLC, A+ Student Staffing LLC (collectively, "A+ Staffing"), Mack Staffing Services, and Robert Mack in the United States District Court for the Eastern District of New York, bearing Case No. 1:22-cv-02306 ("Action No. 1").

7. On June 13, 2022, Krystal Vasquez, Maria de Pillar and Espinoza Vera filed a Class and Collective Action Complaint against Staff Support Team ("Staff Support"), Mack Management Group LLC, Mack Cat Labor, and Robert Mack (collectively, "Mack") in the United States District Court for the Eastern District Court of New York, bearing Case No. 1:22-cv-3468 ("Action No. 2") (Action No. 1 and Action No. 2 are collectively referred to herein as the "Actions").

8. Plaintiffs filed a total of three Amended Complaints in the Actions. On or about September 2022, a First Amended Class and Collective Action Complaint was filed in the Actions. In or about December 2022, a Second Amended Class and Collective Action Complaint was filed in the Actions in which Supreme Restoration, LLC d/b/a Servpro of Washington County and JDL, Inc., d/b/a Servpro of Newport & Bristol Counties (collectively, "Servpro") were also named as Defendants. On March 20, 2023, Plaintiffs filed their third and final Amended Complaint in the Actions.

9. The Actions alleged that Defendants entered into contracts with the Metropolitan Transit Authority and/or New York City Transit Authority (collectively "MTA"), as either prime contractors or subcontractors, to furnish labor, material, and equipment to clean and disinfect MTA subway cars during the COVID-19 pandemic and New York City subway stations

3

("subway cleaning work"). They further alleged that Defendants failed to pay current and former individuals who were employed to perform subway cleaning work ("Subway Cleaners") prevailing wages, daily overtime, holiday premiums, and supplemental benefits to which they were entitled. Further, they alleged that Defendants A+ Staffing LLC, A+ Student Staffing LLC, Staff Support Team, Mack Staffing Services, Robert Mack, Mack Management Group LLC, and Mack Cat Labor failed to provide them with accurate wage notices and wage statements. Lastly, Plaintiffs alleged that Defendants A+ Staffing LLC, A+ Student Staffing LLC, Staff Support Team, Mack Staffing Services, Robert Mack, Mack Management Group LLC, and Mack Cat Labor retaliated against certain individual Plaintiffs for complaining about violations of the NYLL.

10. Defendants deny and continue to deny all of the allegations made in the Actions and have denied and continue to deny that they are liable or that they owe damages to anyone with respect to the allegations or causes of action asserted in the Actions.

11. On November 18, 2022, the Plaintiffs, A+ Staffing, Staff Support, and Mack engaged in a mediation before Mediator Alfred G. Feliu, Esq. that did not result in a settlement. In the weeks leading up to the mediation, the parties exchanged discovery, including employment records and data related to Plaintiffs' potential damages.

12. On December 27, 2022, Mack filed letters requesting a premotion conference to file a motion to dismiss based on the arguments that: (1) Robert Mack, individually, was not a proper party; (2) the work performed by Plaintiffs did not require payment of prevailing wages; (3) Plaintiffs failed to exhaust their administrative remedies before bringing such claims; and (4) Plaintiffs failed to join a required party, the MTA. On or about January 12, 2023, A+ Staffing and Staff Support also filed letters requesting a premotion conference to file a motion to dismiss

based on similar arguments raised by Mack, but also based on the arguments that: (1) Plaintiffs, including opt-in plaintiffs, signed a valid and enforceable arbitration agreements; and (2) all Plaintiffs' claims in this case fell within the scope of that arbitration agreement. On January 18, 2023, Plaintiffs submitted letters responding to the arguments raised in the Defendants' premotion conference letters, arguing (1) Plaintiffs did not agree to arbitrate their claims, (2) Plaintiffs had not asserted claims under the NYLL prevailing wage provisions, so did not need to exhaust their administrative remedies, and (3) Plaintiffs alleged sufficient facts to state a breach of contract claim. After being added to the Actions via Plaintiffs' Second Amended Complaints, Servpro, on or about March 6, 2023, filed letters requesting a premotion conference to file a motion to dismiss based on the arguments that: (1) the work performed by Plaintiffs did not require payment of prevailing ages; (2) Plaintiffs failed to exhaust administrative remedies before bringing such claims; and (3) Plaintiffs' breach of contract claim fails because the MTA contract did not expressly require the payment of prevailing wages.

13. The Court granted Defendants' requests for a premotion conference, which was held on March 7, 2023. At that conference, the Court decided that the issue of whether Plaintiffs must arbitrate their claims would need to be decided before the other issues forming the bases for the Defendants' proposed motions to dismiss. Since the Court would ultimately need to make various findings of fact in order to rule on A+ Staffing and Staff Support's motion to compel arbitration, the Court directed the Plaintiffs, A+ Staffing, and Staff Support to exchange discovery relating to the formation of the arbitration agreements and ordered that the Court would hold evidentiary hearings following that exchange of discovery.

14. On April 3, 2023, A+ Staffing and Staff Support filed their motions to compel arbitration. Over the next three months, Plaintiffs, A+ Staffing, and Staff Support exchanged

5

extensive discovery, including document discovery and interrogatory responses, relating to the formation of the arbitration agreements. The Plaintiffs deposed one witness, Teresa Pollock, the primary Human Resources Manager for A+ Staffing and Staff Support.

15. On April 28, 2023, Plaintiffs filed a motion to certify the FLSA collective. On June 2, 2023, A+ Staffing, Staff Support, and Mack filed opposition to Plaintiffs' motion. Plaintiffs filed reply papers in support of their motion on June 16, 2023.

16. On July 18, 2023, the Plaintiffs, A+ Staffing, and Staff Support informed the Court that they had completed the exchange of discovery relating to the arbitration agreements.

17. On August 21, 2023, Plaintiffs filed an opposition to the A+ Staffing and Staff Support's motions to compel arbitration. On September 5, 2023, A+ Staffing and Staff Support filed reply papers in support of their motions. On September 22, 2023, the Court tentatively scheduled the evidentiary hearings at the end of October for the motions to compel arbitration.

18. On or around September 28, 2023, the Parties informed the Court that they had agreed to a se private mediation on December 14, 2023, with Martin F Scheinman. In light of this agreement, the Court adjourned the evidentiary hearings and related deadlines.

19. In the months leading up to the mediation, the parties exchanged additional discovery relating to employment records, the MTA Contracts, the identities of certain Plaintiffs, and the calculation of Plaintiffs' alleged damages. The parties prepared detailed mediation briefs. The Parties completed the full-day mediation session on December 14, 2023, which resulted in the proposed settlement.

**Overview of Investigation and Discovery**

20. Class Counsel has conducted a thorough investigation into the merits of the potential claims and defenses in this Litigation.

21. Class Counsel focused their investigation and legal research on the underlying merits of the Plaintiffs' claims, the damages to which they are entitled, and the propriety of proceeding on a class-wide basis.

22. Class Counsel conducted interviews with each of the 65 Named and Opt-in Plaintiffs to determine the conditions of their employment and the payments and benefits they received.

23. Class Counsel had many in-depth discussions with Named Plaintiffs and Opt-in Plaintiffs and reviewed documents produced by them to secure information relevant to their claims and the claims of Class Members.

24. In preparation for two mediations, and through the Court-ordered exchange of discovery related to the formation of the arbitration agreements, Plaintiffs' counsel obtained and reviewed hundreds of documents, email messages, WhatsApp messages, and a substantial amount of data from Defendants with respect to all potential Class Members and deposed one witness.

25. Class Counsel conducted extensive legal research on matters such as class certification standards and risk, factually similar cases, summary judgment risks, risks attendant to prevailing wage litigation, and class-wide damages.

26. The A+ Staffing and Staff Support Defendants moved to compel arbitration of Plaintiffs' claims. In support of their motions, they have presented evidence of the existence of arbitration agreements and in support of their position that A+ Staffing and Staff Support had a policy of requiring all of their employees to sign such agreements.

27. Plaintiffs have argued that certain Plaintiffs did not sign arbitration agreements, and that some of the agreements are unenforceable because there were issues with their

formation. Class Counsel gathered a substantial amount of evidence to prove that Defendants' supervisors took actions that indicated the Plaintiffs never actually agreed to arbitrate. These arguments were fully briefed, and the Court was poised to hold evidentiary hearings relating to the factual issues raised. For some Named or Opt-in Plaintiffs, Plaintiffs did not oppose the Motion to Compel due to an absence of a defense relating to the formation of their arbitration agreements, and there was considerable risk that additional Plaintiffs would be compelled to arbitrate certain of their claims individually.

**Settlement Negotiations**

28. Class Counsel prepared for the December 14, 2023, mediation by researching and drafting a detailed mediation statement. Class Counsel reviewed and selected documentary evidence for presentation at mediation, reviewed the data and performed a class wide calculation of damages, and formulated a mediation demand.

29. In advance of the mediation, the parties each submitted detailed mediation statements to the mediator setting forth an overview of the legal and factual landscape of the case.

30. During the mediation, the parties then presented their assessments of the case and discussed the merits of each parties' positions.

31. The parties engaged in a full day mediation session on December 14, 2023, and ultimately reached an agreement as to the resolution of the claims for Plaintiffs and the putative Class and Collective in this Litigation, the terms of which are set forth in the Settlement Agreement. *See* Attachment 1.

32. Defendants have agreed to settle the class claims for the Gross Settlement amount of $1,250,000.00. If Defendants were found liable under the claims made by Plaintiffs, Plaintiffs'

estimation of Defendants' liability, not including interest or attorneys' fees, would have been $5,412,987.

33. In Class Counsel's estimation and weighed in light of the attendant risks presented by litigating this matter further, the settlement reached represents a meaningful recovery of a substantial portion of the wages that the Plaintiffs and the Class and Collective could have obtained had they achieved class certification, prevailed on all of their claims at trial and survived an appeal.

34. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

35. Even though notice of the settlement and its details has not yet been issued to the class, the Named and Opt-in Plaintiffs, which are approximately 20% of the potential class, have expressed their support for the settlement.

**Settlement Fund and Settlement Notice**

36. Defendants have agreed to pay up to a maximum of $1,250,000.00 (the "Gross Settlement Fund") to resolve all claims in the litigation. The Gross Settlement Fund will be used to cover (i) attorneys' fees, expenses and costs approved by the Court; (ii) the Court-approved costs and fees of the Administrator; (iii) all amounts to be paid to Class Members who do not opt out of the proposed settlement; and (iv) any Court-approved service awards.

37. A copy of the Proposed Settlement Notice to Class Members is attached as **Attachment 2**.

38. The Settlement Administrator will mail by U.S. First Class Mail the Proposed Notice (Sweeney Dec., Attachment 2) to the Class Members in English and Spanish. Generally,

9

Class Members will not need to submit anything in order to participate in the settlement.[1] Class Members who choose to opt-out of the settlement must submit Opt-out Statements within 60 days after the initial mailing of Notice to the Class.

39. If the Settlement Agreement is approved by the Court, within 30 days of the Final Effective Date (as defined in Section 1.14 of the Settlement Agreement), the Administrator will mail Settlement Checks to all Class Members who have not submitted Opt-out Statements.

40. Those Class Members will have 90 days after the Settlement Checks are mailed to cash their respective Settlement Checks.

41. After the 90-day period ends, residual funds may be applied to any unforeseen liabilities, claims, expenses, and costs incurred by the Administrator, provided the Administrator first consults with and obtains approval from Class Counsel and Defendants' Counsel.

42. Any uncashed Settlement Checks, and all other amounts remaining in the fund after 90 days shall be void and returned to Defendants, which shall be allocated to Defendants as follows: (i) 54% of the remaining funds to A+ Staffing and Staff Support, collectively; (ii) 38% of the remaining funds to Servpro; and (iii) 8% of the remaining funds to Mack.

**Releases**

43. Any Class Member who does not timely (pursuant to Section 2.8 in the Settlement Agreement) submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not cash his or her settlement check(s).

44. Only Class Members who endorse their settlement checks will waive and release their FLSA Claims as well. Class Members who submit an Opt-out Statement retain their FLSA

---

[1] If an individual is identified as a Class Member, but Defendants do not have information required by the Claims Administrator to process a settlement payment, Class Counsel will request that the individual complete an IRS Form W-9. In that case, if the IRS Form W-9 form is not completed, the individual will no longer be deemed a Class Member.

Claims and/or State Law Claims.

**Allocation Formula**

45. After deduction from the Gross Settlement Fund of: (i) the Court-approved service awards; (ii) the Court-approved costs and fees of the Administrator; and (iii) Court-approved attorney's fees and costs (the "Net Settlement Amount"), Individual Settlement Allocations will be computed based on the number of weeks worked by Class Members (as defined in Section 3.2(A) of the Settlement Agreement).

**Attorneys' Fees, Costs, Service Payments and Administration Fees**

46. As part of its application for final approval, Plaintiffs will petition the Court for an award of attorneys' fees not to exceed $416,000.00 as well as for reimbursement of their actual litigation expenses and costs up to $22,000.00. These fees, expenses and costs shall come out of the Gross Settlement Fund.

47. In addition, Plaintiffs will petition the Court to approve up to $25,000 for the Settlement Administrator's fees for reimbursement of actual costs and expenses to be paid from the Gross Settlement Fund.

48. In addition to their individual Settlement Payments (described below), Named Plaintiffs and Opt-in Plaintiffs (any individual who filed an Opt-in form in either Action) are also requesting service payments ("Service Award") for their efforts rendered on behalf of the class. Named Plaintiffs will apply to receive Service Awards of $5,000 and Opt-in Plaintiffs will apply to receive Service Awards of $2,500.

49. Named and Opt-in Plaintiffs served the class by providing counsel with relevant documents and information. In addition to shouldering the risks of being a named plaintiff in an employment action, Named Plaintiffs further served the class by retaining counsel, bringing

relevant facts to the attention of counsel, and participating in the drafting of the Complaints. Plaintiffs will move for approval of the Service Awards as part of Plaintiffs' Motion for Final Approval of the Settlement.

50. Service awards of this type are commonly awarded in complex litigation. The Court need not rule on the proposed service awards now.

51. The Named Plaintiffs and Opt-in Plaintiffs will move for Court approval of the service awards simultaneously with the Plaintiffs' motion for final approval of the settlement.

**Information on Claims Administrator**

52. RG/2 is a full-service legal settlement administration firm with experience on thousands of settlement administration projects.

53. RG/2 is very experienced in settlement administration related to employment law.

54. Notably, Class Counsel has used RG/2 for settlement administration of complex wage and hour class and collective actions in the past and found them to be reliable, experienced, and cost-efficient.

55. Neither side has any experience or relationship with RG/2 outside the settlement or notice administration context.

56. Counsel for both parties believe that RG/2's estimate of $25,000.00 to administer notices and opt-out statements, calculate individual settlement allocations, and issue checks is fair and reasonable given the size of the class and the services required.

**Class Counsel Biographical Information**

57. I am a Partner at The Law Office of Christopher Q. Davis (the "Davis Firm"). I have more than twenty-five years of experience in employment law. I have been a Partner at the Working Solutions Law Firm since November 2021.

58. I am a member of the New York bar and I am admitted to practice in the U.S. District Court for the Southern and Eastern Districts of New York. I earned a Bachelor of Arts degree from St. John Fisher College in 1992 and I earned a Juris Doctor from Villanova Law School in 1997 (Magna Cum Laude and Order of the Coif).

59. During my first year after graduating law school, I was a law clerk to Honorable James McGirr Kelly of the United States District Court, Eastern District of Pennsylvania.

60. After clerking, I have focused my practice on employment law, with an expertise in class and collective action litigation.

61. From 1998 to 2005, I was an Associate in the Labor and Employment law departments of Morgan, Lewis & Bockius and Seyfarth Shaw.

62. From 2005 to 2016, I held a number of in-house counsel roles at Morgan Stanley and Luxottica Group. For ten years, I was Global Head of Litigation and Employment Law for Luxottica Group. I was responsible for hiring and managing in-house and external lawyers and overseeing Luxottica Group's litigation. I was also responsible for employment law compliance and was an advisor to business and Human Resources leaders.

63. From 2016 to 2021, I was Of Counsel/Principal in the labor and employment law departments of Seyfarth Shaw and Jackson Lewis. While at Seyfarth Shaw, my billable rate was $750 per hour. While at Jackson Lewis, my billable rate was $650 per hour.

64. I have extensive experience managing and litigating class and collective lawsuits for both defendants and plaintiffs. I also have significant experience advising employers on wage and hour compliance and litigation.

65. I have taken and defended numerous depositions in all types of employment litigation, including collective and class action cases.

66. I have also settled or participated in settlement negotiations of more than 25 collective and/or class actions.

67. The following are some of the cases in which I have been lead counsel or played a significant role on a litigation team: *Cucinotta v. Personal Touch Holding Corp.*, 19-CV-0057 (SJF)(AYS) (EDNY); *Watterson v. RUI Mgmt. Servs., Inc.*, 20-CV-1783 (GRB)(JMW) (EDNY); *Durling v. Papa John's International, Inc.*, 16 Civ. 3592 (CS)(JCM) (SDNY); *Zorilla v. Carlson Restaurants, Inc.* 14 Civ. 2740 (AT)(GWG) (SDNY); and *Chan v. Big Geyser*, 17-CV-6473 (ALC)(SN).

68. Christopher Q. Davis and I are co-lead counsel for the Named Plaintiffs and putative class and collective. Mr. Davis is Principal and Managing Partner of The Law Office of Christopher Q. Davis PLLC.

69. Mr. Davis has practiced for twenty years with a primary focus on litigation of labor and employment law cases. He is a member of the bar of the State of New York and is admitted to practice before the Second Circuit Court of Appeals, and the U.S. District Court for the Eastern, Southern and Northern Districts of New York.

70. Mr. Davis received an undergraduate degree in 1995 from The College of the Holy Cross in Worcester, Massachusetts.

71. In 2001, Mr. Davis received a Juris Doctor from the Catholic University of America in Washington, D.C.

72. From 2001 to 2006, Mr. Davis was employed as an Assistant District Attorney in the Manhattan District Attorney's Office.

73. During his tenure as an Assistant District Attorney, Mr. Davis tried approximately 20 felony and misdemeanor cases to verdict.

74. Following his tenure as an Assistant District Attorney, Mr. Davis entered private practice as a senior Associate with the employment law firm Thompson Wigdor & Gilly LLP ("TWG"), now Wigdor LLP, assuming primary responsibility over several plaintiffs'-side and management-side lawsuits.

75. After leaving TWG in 2009, Mr. Davis gained employment with The Ottinger Firm, P.C., and served as the firm's Managing Attorney.

76. While with The Ottinger Firm, Mr. Davis was responsible for all aspects of the firm's operation, including managing and serving as lead attorney on numerous nationwide class and collective actions.

77. Mr. Davis has extensive experience managing and litigating wage and hour lawsuits. He has taken and defended numerous depositions in collective and class action cases.

78. Since entering private practice, Mr. Davis has settled or participated in settlement negotiations of more than 20 collective and/or class actions.

79. While with The Ottinger Firm, Mr. Davis was lead Counsel in the matter *of Martinez v. Forest Laboratories, Inc. et al,* 10-CV-06032 (S.D.N.Y.), in which preliminary certification on an FLSA class was granted by Judge William H. Pauley on June 2, 2011.

80. While with The Ottinger Firm, Mr. Davis served as lead Counsel in the matter of *Landin et al. v. UBS et al*, 10-CV-711 (S.D.N.Y.), a hybrid class and collective action which settled upon beneficial terms for the class and with the final approval of Judge Richard M. Berman.

81. While with The Ottinger Firm, Mr. Davis also served as lead Counsel on the following overtime class actions in which The Ottinger Firm was appointed Class Counsel: (a) *Spencer v. Bargain Land*, 10-CV-0957 (S.D.N.Y.); (b) *Fouathia v. Gurwich Products*, 10-CV-

5411 (S.D.N.Y.); (c) *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412 (S.D.N.Y.).

82. As a partner at the law firm of Stoll, Glickman & Bellina, LLP, Mr. Davis was appointed Class Counsel in *Bryan, et al. v. Urban Telecommunications, Inc., et al.*, Case No. 12-CV-2186 (S.D.N.Y.), *Oleniak, et al. v. Time Warner Cable, Inc., et al.*, Case No. 1:12-cv-03971 (S.D.N.Y), and *Francois, et al. v. Entrust Merchant Solutions d/b/a Entrust Cash Advance, et al.,* Case No. 13-cv-0455 (S.D.N.Y.), all overtime class and collective actions in which Mr. Davis served as lead attorney. Each of the abovementioned litigations settled upon favorable terms for the class and was approved by Judge P. Kevin Castel, Judge Katherine Polk Failla, and Judge Analisa Torres, respectively.

83. On July 28, 2014, Mr. Davis resigned from Stoll, Glickman and Bellina, LLP to form his own law firm.

84. As managing partner, Mr. Davis has been appointed Class Counsel on numerous occasions, including but not limited to: *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY); *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (EDNY); *Sheikh et al v. Align Communications, Inc.*, 1:15-cv-07548-LGS (SDNY); *Lobbe et al v. Cablevision System Corporation et al*, 1:16-cv-02207-AKH (SDNY); *Villegas et al v. Cablevision Systems New York City Corporation et al*, 1:17-cv-05824-VMS (EDNY); *Douglas v. Allied Universal Security Services et al,* 1:17-cv-06093-SJB (EDNY); and *Bannerman v. Air-Sea Packing Group Inc., et al* Case No. 18-cv-6146 (SDNY).

85. Our firm was recently appointed as class counsel in *Shaw v. Hornblower Cruises & Events, LLC,* 21-cv-10408-VM-OTW (S.D.N.Y) and counsel for the collective in *Rosenberg v. BioReference Laboratories, Inc.*, 2:2022-cv-02321 (D.N.J. Jan. 30, 2024).

Dated: February 15, 2024

                                            Respectfully Submitted,

                                            /s/ Brendan Sweeney
                                            Brendan Sweeney
                                            **The Law Office of Christopher Q. Davis**
                                            80 Broad Street, Suite 703
                                            New York, New York 10004